UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICKY RAUCH, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1904 RJL |
| | ) |
| MICHAEL CHERTOFF, | ) |
|   Secretary of the Department | ) |
|   of Homeland Security | ) |
| | ) |
| Defendant. | ) |
| | ) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND/OR TO TRANSFER

Defendant has sought dismissal for lack of proper venue and, alternatively, a transfer because venue properly lies in the Eastern District of Louisiana and transfer would be appropriate, inter alia, pursuant to 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice. . ."

Plaintiff opposes, arguing, in essence, that because his Official Personnel Folder is here and certain claimed retaliatory actions were allegedly "taken at the direction of or with the approval of Charles E. Stallworth II . . . in Washington, D.C.," his action should remain here. See Plaintiff's 3/7/06 Declaration, ¶¶ 5-6. In essence, Plaintiff seeks to have the Court retain the action, because approvals of various decisions came from here. Even assuming that this approval theory were sufficient to satisfy the venue provision in Title VII, transfer would be appropriate, given that every witness besides Mr. Stallworth has no link to this District and was, instead, living

and working in Louisiana, where Plaintiff still lives.

Below are just some of the allegations that Plaintiff has made that will require the parties to amass the witnesses in Louisiana if the case is allowed to proceed:[1]

1)  On or about November 20, 2000, plaintiff suffered an on-the-job injury, of which Branch Chief Coover[2] was aware. Complaint, ¶ 12.

2)  Plaintiff re-injured his back in February 2002. Id., ¶ 13.

3)  Between the period February 2002 and May 2002, Branch Chief Coover subjected Plaintiff to harassment because of his injuries. Id., ¶ 14.

4)  Coover refused to allow plaintiff to perform his supervisory duties. Id., ¶ 15.

5)  Coover repeatedly ignored Plaintiff's injury limitations and assigned him physical tasks that caused further aggravation to his injury. Id.

6)  Commencing in July 2002, Coover engaged in a pattern and practice of retaliation. Id., ¶ 18.

---

[1]  Defendant does not concede the accuracy of these claims, but lists them to demonstrate that the vast majority, if not all, of the factual issues and relevant witnesses come from Louisiana.

[2]  As Plaintiff recognizes, "[a]t all times material... Fred Coover was the Branch Chief . . . in Belle Chase, Louisiana." Complaint, ¶ 8. Similarly, "[a]t all times material . . . Nicholas Douchet was a supervisor . . . in Belle Chase, Louisiana." Id., ¶ 10.

7)  Coover labeled Plaintiff as a fake and publically
informed co-workers that Plaintiff was a "troublemaker" for
filing an EEO complaint.  <u>Id</u>., ¶ 19.

8) Among other actions, Coover refused to afford Plaintiff
the same supervisory opportunities as younger supervisors.  <u>Id.</u>,
¶ 20.

9)  With the sole intent of affecting plaintiff's job
duties, Coover removed his name from the supervisory distribution
lists and issued work assignments directly to employees
supervised by plaintiff.  <u>Id.</u>, ¶ 21.

10)  Coover's actions were "persistent and continuous" and
"so pervasive that the work environment became extremely
hostile."  <u>Id.</u>, ¶ 22.

11)  Coover directed Douchet to issue plaintiff an amended
position description, "in furtherance of Branch Chief Coover's
harassment towards the plaintiff and in retaliation. . . ."
<u>Id.</u>, ¶¶ 24-27.

12)  In March 2003, Coover communicated to other staff
members about his intent to "do him" as it pertained to
Plaintiff.  <u>Id.</u>, ¶ 28.

13)  Coover also directed other staff members to spy on
Plaintiff.  <u>Id.</u>, ¶ 29.

14)  On March 27, 2003, Douchet informed Plaintiff that
Coover directed him to rate Plaintiff "unsatisfactory."  <u>Id.</u>, ¶

30.

    15) "Coover and others at his direct[ion] . . ."

        A) circumvented Plaintiff and removed him
        from the chain of command;

        B) Directed Plaintiff's reassignment in July
        2003 to Washington, DC;

        C) refused to assign Plaintiff sedentary
        duties;

        D) Abolished hid GS-13 Supervisory position
        from the Gulfport operations;

        E) refused to accommodate Plaintiff and
        assign to a job with law enforcement
        retirement; and

        F) placed Plaintiff in a position with no
        supervisory responsibilities.

Complaint, ¶ 35.

    Although the Complaint makes clear that these alleged actions were purportedly taken against Plaintiff by Chief Coover and others at his direction, <u>see</u> Complaint, ¶ 35,[3] he now attempts to divert blame to Charles Stallworth, the sole witness ever alleged to have been located in Washington, DC. Plaintiff's Opp. at 4. As the record makes abundantly clear, the vast majority of the allegations at issue in the case, and the locale with the greatest likelihood of having evidence that will prove

---

[3] The language in paragraph 35 is grammatically incorrect, but makes clear that Plaintiff claims the wrongs that befell him were committed by Chief Coover and others at his direction. <u>See</u> Complaint, ¶ 35 ("In response to the filing of his second EEOC administrative complaint, Branch Chief Coover and others at his directed [sic] engaged in the following actions:. . .").

or disprove Plaintiff's allegations is, without question, the Eastern District of Louisiana.

As Plaintiff appears to admit in the declaration provided during the EEO process, Mr. Stallworth acted, in Plaintiff's view, under the influence of Mr. Coover's information; indeed, Plaintiff had a good working relationship with Stallworth. Plaintiff's 2/20/04 Sworn Declaration ("Plaintiff's 2/20/04 Decl.") at 6 ("I believe Fred Coover, and/or those working on his behalf, methodically and systematically destroyed my professional character to my peers, my supervisors and to Mr. Stallworth."), see also id. at 14-15 ("I was passed over because of Mr. Coover's discriminatory and retaliatory attitudes toward me in which he influenced management. . ."). Thus, if Plaintiff is to be believed, the witnesses with relevant evidence will include -- indeed, focus on -- his co-workers, supervisors and other witnesses in Louisiana. Id. The Plaintiff's declaration identifies numerous Louisiana witnesses who will surely have relevant information, including:

> 1) Plaintiff's treating physicians, surgeons and the custodians of his medical records (MRI results, X-Ray results, prescription pain medications), see Plaintiff's 2/20/04 Decl. at 8, 11, and 16;[4]

---

[4] Plaintiff complained about his proposed reassignment to Washington, DC, because "My medical team consisted of 4 highly trained specialists. They are all in the New Orleans area. Transfer of care to the Washington area would have been very difficult and disruptive to my medical condition. . . . I have developed a trusting professional relationship with my

2) Plaintiff's "other supervisors and peers," id. at 13, see also id. at 9-12;

3) female federal agents on maternity leave, id. at 20;

4) Plaintiff's wife and son, id. at 21; and

5) Plaintiff's neighbors.  Id.

Indeed, a review of Plaintiff's earlier declaration reveals that the only logical location likely to contain most of the relevant information is Louisiana.  See Plaintiff's 2/20/04 Decl. at 2-23. In truth, Plaintiff has attempted to shift the focus of his claims in order to manufacture venue here.  He argues that "many of the instances of retaliation taken against me which were described in my complaint were taken at the direction of or with the approval of Charles E. Stallworth II, . . . from his office in Washington, D.C."  Plaintiff's 3/7/06 Decl., ¶ 6; see also id., ¶¶ 10-11, 15-16 (reiterating plaintiff's claims that certain actions were taken with the approval of Mr. Stallworth).  Even if these allegations could constitute discrimination occurring here, which, given Stallworth's admitted lack of intent to discriminate, defendant doubts, it remains clear that the bulk of the evidence and testimony will come from witnesses and documents elsewhere.  Transfer under such circumstances is obviously what is intended by  28 U.S.C. §§ 1404 and/or 1406.

Plaintiff seeks to base venue on the fact that his Official

Psychiatrist."  Plaintiff's 2/20/04 Decl. at 16.

Personnel Folder ("OPF") is located here.  See Plaintiff's Opp. at 8.  Plaintiff apparently seeks to treat the OPF as if it contains the personnel records relevant to Plaintiff's claim of discrimination.  In fact, venue is appropriate where the "employment records relevant to such [unlawful employment] practice are maintained and administered."  42 U.S.C. § 2000e-5(f)(3) (emphasis added).  Here, Plaintiff indicates only that his OPF has always been maintained here.  Plaintiff's 3/7/06 Decl., ¶ 5.  The fact is, however, that the relevant records would be those that deal with his allegations of discrimination.  Those records can be found in Louisiana.  See Doucet Decl., ¶¶ 4-6, 8; Coover Decl., ¶¶ 3-12.  Where some records in a Title VII action are available in this District, but most are maintained in another district, venue is not proper under either Title VII or the Rehabilitation Act in the District of Columbia.  Archuleta v. Sullivan, 725 F. Supp. 602, 605 (D.D.C. 1989).  Moreover, even were Plaintiff's OPF somehow deemed to be relevant, it far more easily can be copied and/or transmitted to Louisiana than all of the witnesses can be brought here for discovery and/or trial.

Plaintiff argues that transfer to Louisiana would be ill-advised, in part, because he "no longer resides" there. Plaintiff's Opp. at 8.  The Complaint, filed September 27, 2005, lists Plaintiff's address as: "6064 Memphis Street, New Orleans, LA 70124."  See Complaint, Caption.  And neither Plaintiff's

3/7/06 Declaration or the Court's docket lists any other address. <u>See</u> Local Civ. R. 11.1 ("Unless changed by notice filed with the Clerk, the address and telephone number of a party or an attorney noted on the first filing shall be conclusively taken as the last known address and telephone number of the party or attorney.")

Plaintiff suggests that the aftermath of Hurricane Katrina in August 2005 and speculative fears of how the weather may behave in the future warrant the retention of the case in this venue rather than transfer to the Eastern District of Louisiana. <u>See</u> Plaintiff's Opp. at 2-4, 8. Although Defendant does not doubt that the employees and attorneys practicing in the United States District Court for the Eastern District of Louisiana were adversely affected by the storm, as far back as November 3, 2005, the Chief Judge of that Court concluded as follows:

> As the United States Court House in New Orleans has reopened on November 1, numerous attorneys' offices have reopened in New Orleans or are otherwise operating in alternate locations, and with improving services and communication in the region,
>
> IT IS HEREBY ORDERED that the suspension of deadlines and delays, including liberative prescriptive and peremptive periods in all civil cases pending or to be filed in this Court, **is terminated effective November 25, 2005**, except for good cause shown as determined by the presiding judge.

New Orleans, Louisiana, this 3rd day of November, 2005.
November 3, 2005 Order (E.D. La.) (available on the world wide web at <u>http://www.laed.uscourts.gov/GENERAL/Notices/</u> Termination%20of%20Order%2011.03.05.pdf (last accessed March 31,

-8-

2006)).[5]  Notwithstanding the sympathy one must feel for those
who suffered from the hurricane, the storm has ended.  The
Federal Court system remains in place in Louisiana, and there is
no benefit to be gained from having to transport the relevant
witnesses or documents here, including Plaintiff,[6] his numerous
doctors,[7] his family, his neighbors, his first-line supervisor
(Nicholas Doucet), and co-workers who would have witnessed any
evidence proving or disproving Plaintiff's claims of
discrimination.[8]  Those witnesses have suffered enough, and
difficult travel should not be forced on them to participate in
discovery or any trial in this action when the case can readily
be resolved at the location where all or nearly all of the
relevant events took place.

    In short, Plaintiff invites this Court to apply a
"'commonsense appraisal' of events having operative

---

[5]  Defendant asks that the Court take judicial notice of this
order, pursuant to Fed. R. Evid. 201; EEOC v. St. Francis Xavier
Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

[6]  Plaintiff resides in Louisiana.  See Coover Decl., ¶ 5;
Complaint, Caption.

[7]  Plaintiff alleges that he re-injured his back, an injury that
occurred on or off the coast of Louisiana.  See Complaint, ¶¶ 12-
13; Coover Decl., ¶ 6.

[8]  For instance, Plaintiff's coworkers would likely have relevant
evidence regarding his claim that Mr. Coover subjected Plaintiff
to harassment by refusing to allow him to perform supervisory
duties, ignoring his injury limitations, and assigning him tasks
that were not part of his position description.  See Complaint,
¶¶ 14-17; Coover Decl., ¶ 7.

significance."  Plaintiff's Opp. at 6 (quoting <u>Lamont</u> v. <u>Haig</u>, 590 F.2d 1124, 1134 (D.C. Cir. 1978); <u>Donnell</u> v. <u>Nat'l Guard Bureau</u>, 568 F. Supp. 93, 94 (D.D.C. 1983)).  Defendant agrees, and submits that the most logical and commonsense venue is the Eastern District of Louisiana, where Plaintiff did work at the times he alleges he was treated unlawfully, rather than the District of Columbia where he did not work and where he does not allege he would have worked absent discrimination.  <u>See</u> Plaintiff's 2/20/04 Decl. at 2-12; <u>Stebbins</u> v. <u>State Farm Mutual Auto. Ins. Co.</u>, 413 F.2d 1100, 1102-03 (D.C. Cir.) (it was the intent of Congress to limit venue to the judicial districts concerned with the alleged discrimination), <u>cert.</u> <u>denied</u>, 369 U.S. 895 (1969).

WHEREFORE this action should be transferred or dismissed for improper venue.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

-10-

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Defendant's Reply To Plaintiff's Response In Opposition To Defendant's Motion To Dismiss And/Or To Transfer has been made through the Court's electronic transmission facilities to:

STEPHEN G. DENIGRIS, ESQ.
2100 M Street, N.W.
Suite 170-283
Washington, DC  20037
sgd853@aol.com


on this 31st day of March, 2006.


_____
W. MARK NEBEKER, D.C. Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230